


Jennifer A. Morgan
Mitchell A. Young
County Litigation Group
2715 Skyway Dr.
Helena, MT 59602
(406) 441-5471
jmorgan@mtcounties.org
myoung@mtcounties.org
Counsel for County Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| ALEXANDRE ZDENEK DAVIS, | Cause No.: CV 24-3-GF-DWM |
|---|---|
| Plaintiff, | |
| v. | COUNTY DEFENDANTS' BRIEF IN SUPPORT OF RULE 12(b)(6) PARTIAL MOTION TO DISMISS |
| JESSE SLAUGHTER, et al., | |
| Defendants. | |

Defendants Sheriff Jesse Slaughter, Captain William Darby, and Undersheriff Scott Van Dyken, (County Defendants), through their counsel of record, having moved this Court for an order seeking partial dismissal of this action pursuant to Rule 12(b), Fed. R. Civ. P., submits herein County Defendant's Brief in Support of Rule 12(b)(6) Partial Motion to Dismiss.

## INTRODUCTION

Plaintiff Alexandre Davis (Davis) filed his Amended Complaint (Dkt. 77) January 6, 2025, naming Sheriff Jesse Slaughter, Captain William Darby, Undersheriff Scott Van Dyken, and Jacki Miller in their individual and official capacities. Sheriff Slaughter, Captain Darby, and Undersheriff Van Dyken are employees of Cascade County who work at Cascade County Detention Center (CCDC) and are represented through their counsel of record. Jacki Miller is an employee of Turn Key Health Clinics, LLC. It is unknown if Ms. Miller has been properly served or is represented by counsel in this matter.

The County Defendants seek dismissal of the following claims contained in Davis's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: Claim One: Eighth Amendment Failure to Protect, Claim Two: PREA Violations, Claim Three, Montana's Duty of Care, Claim Four: Overcrowding, and Claim Seven: Denial of Medical/Mental Healthcare.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In *Twombly*, the Supreme Court held that the standard for stating a claim does not require the appearance, beyond a doubt, that "no set of facts" would entitle the plaintiff to relief. 550 U.S. at 561-63. (abrogating *Conley v. Gibson,* 355 U.S. 41 (1957), and adopting "plausibility" standard). The Court further explained in *Twombly* and *Iqbal* that conclusory statements that merely recite the elements of a claim are insufficient for the purpose of 12(b)(6). *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly,* 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## ARGUMENT

**I.     Claim One: Failure to Protect.**

Claim One is an alleged violation of constitutional rights brought under 42 U.S.C. § 1983 directed at Sheriff Jesse Slaughter and Captain William Darby in their official and individual capacities. Davis's failure to protect claim alleges that Sheriff Slaughter and Captain Darby failed to protect him from sexual assault by another inmate, Joseph Fiese (Inmate Friese) and, therefore, his constitutional rights were violated under the Eight Amendment. Specifically, Davis argues that

Sheriff Slaughter and Captain Darby failed to train staff on proper housing placements.

Supervisory officials like Sheriff Slaughter and Captain Darby "may not be held liable [under section 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (2009) (italics in original). Rather, supervisory officials can only be held liable under section 1983 if they themselves personally violated a constitutional right. *Id*. 556 U.S. at 683. A supervisor may be liable:

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation and citation omitted).

Thus, although a supervisor need not be physically present at the time a constitutional violation occurs, to impose liability against that supervisor a plaintiff must establish that the supervisor engaged in some "culpable action, or inaction," that caused the constitutional violation committed by his or her subordinates. *Starr*, 652 F.3d at 1205 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). To do so, a plaintiff must establish that the supervisor acted with "deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her

subordinates." *Id*. 652 F.3d at 1207. *See also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Ultimately, a plaintiff must show that a supervisor's conduct was the proximate cause of the plaintiff's injury, i.e. that there is a "sufficient causal connection" between the supervisor's conduct and the violation of a constitutional right inflicted by a subordinate. *Starr*, 652 F.3d at 1207. Thus, the Ninth Circuit has summarized the general circumstances in which a supervisory official could be held liable:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*Moss v. United States Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) (citations omitted).

Here, Davis alleges Sheriff Slaughter and Captain Darby failed to train staff on proper housing procedures which would have protected him from Inmate Friese and the alleged violation of his constitutional rights. But to prevail on a section 1983 claim against a supervisory official for a failure to implement certain policies and for a failure to properly train subordinates relative to those policies, the plaintiff "must show that [the supervisor's] failure to train amounted to deliberate indifference[]" to the need

for more or different policies and training. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A supervisor can be liable for failing to create necessary policies and failing to train subordinates when:

> in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor]... can reasonably be said to have been deliberately indifferent to the need.

*Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The factual allegations must demonstrate that a supervisor's failure to implement policies and to train subordinates was the result of "a deliberate or conscious choice to follow a course of action . . . from among various alternatives" available to the supervisor. *Clement,* 298 F.3d at 905 (quoting *City of Canton*, 489 U.S. at 389) (quotation marks omitted).

In this case, Davis's allegations against Sheriff Slaughter and Captain Darby are limited. Davis alleges that Sheriff Slaughter and Captain Darby are liable because, they knew Davis was vulnerable to sexual and physical assault, that they failed to train staff on housing placement, and that they knew Inmate Friese was a risk to the inmate population. Davis's allegations suggest that if Sheriff Slaughter and Captain Darby had trained officers on proper housing placement, they could have prevented the alleged constitutional violation.

Davis fails to plead any facts describing any personally culpable conduct on the part of either Sheriff Slaughter or Captain Darby. The Amended Complaint does not

allege any fact which indicates any prior occurrences of improper housing placements that resulted in a constitutional violation or that Sheriff Slaughter or Captain Darby were aware of, or had knowledge of any prior occurrences. There is no allegation of a pattern of similar constitutional violations, nor can one be inferred from the Amended Complaint. Davis fails to provide more that conclusory allegations and generalities and therefore stops short of the line between possibility and plausibility as required by *Twombly* and *Iqbal.* Consequently, Claim One should be dismissed.

## II.    Claim Two: PREA Violations

Davis alleges that CCDC violated certain protocols under Prison Rape Elimination Act (PREA) and therefore he is entitled to relief. Davis does not identify which Defendant, if any, this claim involves. First, Davis alleges that because he has no privacy when showering, he is as vulnerable to voyeurism. Next, Davis alleges that PREA contact information was not posted in CCDC housing units. Finally, Davis alleges CCDC does not offer psychology or therapy for rape victims.

PREA does not provide a right of action which entitles Davis to relief. PREA was enacted to address the issue of rape in prison. It was intended to compile data and statistics concerning incidents of prison rape and to develop and implement national standards to detect, prevent, and punish prison rape. *See* PREA, 42 U.S.C. §§ 30302-03, 30306-07. PREA does not provide any specific rights to prisoners.

*See Gonzaga Univ. v. Doe,* 5536 U.S. 273, 279-80 (2002) (absent "an 'unambiguous' intent to confer individual rights," such as a private right of action, the court will not imply the existence of such a right in a federal funding provision). The court's role is to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010). Without "specific Congressional intent, no private right of action exists." PREA does not "explicitly or implicitly suggest[ ] that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." *Hatcher v. Harrington*, 2015 WL 474313, at *5 (D. Hawaii, Feb. 5, 2015). "Nor does the PREA's language, structure, context, or legislative history suggest that Congress intended to create a private remedy for noncompliance with the PREA." *Hatcher*, 2015 WL 474313, at *5; *see* 42 U.S.C. § 15607(e) (explicitly directing the Attorney General to enforce compliance with the PREA).

As a threshold matter, Davis does not direct Claim Two toward any Defendant named in the Amended Complaint. Moreover, because no private cause of action exists under PREA that would entitle Davis to relief, Claim Two should be dismissed.

## III. Claim Three: Violating Montana's Duty of Care

Davis has sued Sheriff Slaughter and Captain Darby in their official and individual capacities alleging that they knew that Inmate Friese was a danger to others and that they had a "duty to protect myself and other inmates by keeping him from the general population." (Dkt. 77, p. 7.)

Sheriff Slaughter and Captain Darby are immune from liability as to Davis's state law claims against them in their individual capacity. Montana law provides that "the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, . . . ." Mont. Code Ann. § 2-9-305(5). The Montana Supreme Court has held that Mont. Code Ann. § 2-9-305(5) provides an explicit grant of immunity for an employee whose conduct gives rises to the suit if the claim rises out to of the course and scope of the employee's employment. *Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006). Thus, Cascade County is liable for actions committed by its employees, including Sheriff Slaughter and Captain Darby when acting in the course and scope of their employment, subject to the exceptions provided in Mont. Code Ann. § 2-9-305 (which are not at issue in this case).

Davis does not allege that Sheriff Slaughter or Captain Darby acted outside the course and scope of their employment at any time during the events of August 10, 2023, or at any other time, nor does he allege that they committed any act which would deprive either one of them of indemnity under Montana law. *See* Mont. Code Ann. § 2-9-305. Naming Cascade County employees in their official capacities is clearly an allegation that the employees were acting within the course and scope of their employment. At the motion to dismiss stage, the factual allegations in the complaint must sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. *See Twombly*, 550 U.S. 544 (2007). Therefore, the Court may take as true that Sheriff Slaughter and Captain Darby were acting in the course and scope of their employment.

Davis also claims Sheriff Slaughter and Captain Darby violated Montana law in their official capacity. Official capacity claims generally represent another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). The employer is ultimately liable for the actions of its employees in official capacity claims. *Graham,* 473 U.S. at 169. Official capacity claims against an agent are unreasonable claims, entitling the prevailing defendant to attorneys' fees. *Germann,* 137 P.3d at 552 (citing *Morse v. North Coast Opportunities, Inc.* 118 F.3d 1338, 1343 (9th Cir.1997).

Because Montana law provides immunity to Sheriff Slaughter and Captain Darby with regard to claims arising from actions taken in the course and scope of their employment, Davis has failed to articulate a cognizable state law claim against Sheriff Slaughter or Captain Darby. Additionally, Davis's claim that Sheriff Slaughter and Captain Darby acted in their official capacity is an unreasonable claim which should be dismissed. Thus, Claim Three, alleging Sheriff Slaughter and Captain Darby violated Montana's Duty of Care, should be dismissed.

**IV. Claim Four: Overcrowding**

Davis claims that due to overcrowding his safety was put at risk because he was "forced to sleep on the floor of a 2-man cell as a 3rd inmate while my [sic] stay at CCDC." (Dkt. 77, at 8.) Davis claims that Sheriff Slaughter, Reeves (who is not a named Defendant in the Amended Complaint), and Captain Darby should have notified that United States Marshalls to house him at another facility due to the alleged overcrowding at CCDC.

Allegations of overcrowding, alone, are insufficient to state a claim under the Eighth Amendment. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989). Where crowding causes an increase in violence or reduces the provision of other constitutionally required services, or reaches a level where the institution is no longer fit for human habitation, the prisoner may be able to state a claim. *Balla*, 869 F.2d at 471. In *Balla,* the court's determination of overcrowding was

related to a finding that the prison was overcapacity by 50%. Additionally, the prison had known for years to be double celling closed-custody high-security inmates, which lead to an increase in violence. *Id.* at 472.

Here, the only facts Davis provides to support his constitutional claim is that, as a third inmate assigned to a two-man cell, he was forced to sleep on the floor. These facts, if taken as true, do no more than indicate he likely spent an uncomfortable night on the floor at CCDC. However, these facts do not entitle Davis to relief.

Davis has not pled facts which sufficiently support a plausible claim that CCDC was overcrowded, nor has he pled facts which support an inference that he suffered a constitutional violation resulting from overcrowding. Unlike the plaintiffs in *Balla*, Davis makes no claim that overcrowding caused increased violence at CCDC, that overcrowding reduced constitutionally required services at CCDC, or that CCDC was no longer fit for human habitation. Davis fails to provide facts could provide a plausible connection between a constitutional violation related to overcrowding and any action or inaction of the defendants. Because Davis's allegations of overcrowding are insufficient to bring a claim under the Eight Amendment, Claim Four should be dismissed.

## IV. Claim Seven: Denial of Medical/Mental Healthcare

Davis's claim that he was denied medical and mental health care is a claim that CCDC violated PREA standards. Davis alleges that "[A]s a victim of rape at CCDC, *per the PREA guidelines*, I was to receive mental health and trauma care." (emphasis added). Davis provides no other federal constitutional or statutory basis for his claim other than "PREA guidelines."

As stated in Section II above, the PREA does not create a remedy for inmates to sue prison officials for noncompliance with the Act. *See* PREA, 42 U.S.C. §§ 30302-03, 30306-07. Because the only basis for Claim Seven is a violation of PREA guidelines, it fails to state a claim for which relief can be granted, Claim Seven should be dismissed.

## CONCLUSION

For the foregoing reasons, the County Defendants respectfully request that Claim One: Eighth Amendment Failure to Protect, Claim Two: PREA Violations, Claim Three: Montana's Duty of Care, Claim Four: Overcrowding, and Claim Seven: Denial of Medical/Mental Healthcare be dismissed with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P.

DATED this 21st of January 2025.

County Litigation Group

*/s/Jennifer A. Morgan*
Jennifer A. Morgan

## CERTIFICATE OF COMPLIANCE

The undersigned represents that in accordance with L.R. 7.1(d)(2)(E), the foregoing Brief in Support contains 2804 words, excluding caption, , and certificate of service and compliance, as calculated by Microsoft Word software.

        County Litigation Group

        */s/ Jennifer A. Morgan*
        Jennifer A. Morgan

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January 2025, a true and correct copy of the foregoing *Defendants' Brief in Support of Rule 12(b)(6) Partial Motion to Dismiss* was sent to all counsel of record through the following means:

| | |
|---|---|
| Alexandre Zdenek Davis<br>ID # 36427-510<br>Federal Correctional Complex (Medium)<br>P.O. Box 6000<br>Florence, CO 81226 | [X] U.S. Mail, postage prepaid<br>[ ] Overnight Delivery<br>[ ] Hand Delivery<br>[ ] Email/Eservice |

        */s/Finn Hanson*
        Finn Hanson