IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ALEXANDRE DAVIS, | CV 24-3-GF-DWM |
| Plaintiff, | |
| vs. | ORDER |
| JESSE SLAUGHTER, et al., | |
| Defendants. | |

Defendants Jesse Slaughter, William Darby, and Scott Van Dyken have filed a motion for partial dismissal of several claims in Plaintiff Alexandre Zdenek Davis's Amended Complaint. (Doc. 79.) Davis has responded. (Doc. 82.) The motion is granted, in part, and denied, in part.

I.   **BACKGROUND**

Briefly stated, Davis's claims arose while he was detained at Cascade County Detention Center in 2023. (Doc. 77 at 4.) He alleges that he was raped in that facility on August 9 and 10, 2023. He asserts various claims related to that rape, including failure to protect, violations of the Prison Rape Elimination Act, violations of Montana's duty of care, overcrowding, retaliation, intentional infliction of emotional distress, and denial of medical and mental health care. (Doc. 77 at 5 – 11.)

1

Davis filed his original complaint on January 2, 2024. The Complaint was served on Defendants shortly thereafter. (Doc. 7.) Since that time, Davis has been moved to various facilities and has filed various supplements, exhibits, and then, mostly recently, the amended complaint at issue in this motion. The docket is unusually lengthy given how little progress this litigation has actually made in a year.

## II. MOTION TO DISMISS

Defendants Slaughter, Darby, and Van Dyken have moved to dismiss the following aspects of the Amended Complaint, under Fed. R. Civ. P. 12(b)(6): Claim One: Eighth Amendment Failure to Protect; Claim Two: PREA Violations; Claim Three, Montana's Duty of Care; Claim Four: Overcrowding; and Claim Seven: Denial of Medical/Mental Healthcare. (Doc. 79.)

### A. Standard

In considering a motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 740, (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, *reh'g denied,* 396 U.S. 869 (1969). A plaintiff's complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court must

2

accept as true the plaintiff's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted).

    B.    Analysis

The Court's analysis here is pulled by two countervailing forces: the law that says an amended complaint supplants the original pleading, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), and the law that requires pro se filings "'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007). The path out of this dilemma is led by Fed. R. Civ. P. 8's notice pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The exact scope of this mandate has changed over the years (*cf.*, *Conley v. Gibson*, 355 U.S. 41 (1957) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)), but the

principle is the same, that a plaintiff must provide plausible "grounds" of his "entitle[ment] to relief." *Twombly*, 550 U.S., at 555.

Rule 8(e) also provides that "pleadings must be construed as to do justice." "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513–14 (2002). As a result, the factual allegations in Davis's much more elaborate original complaint will be read to, at least, inform the factual allegations in his amended complaint that Defendants now consider insufficient.

1. Claim One: Eighth Amendment Failure to Protect

Defendants move to dismiss Davis's failure to protect claim on the basis that it is directed at Sheriff Slaughter and Captain Darby, who cannot be held liable solely because of their supervisory capacity. (Doc. 80 at 3 – 4.) Defendants construe Davis's allegations only as claiming that Slaughter and Darby failed to train their employees properly in determining who should share cells, thus causing the sexual assault of Davis. (Doc. 80 at 3 – 4.) Defendants claim Davis's allegations are insufficient regarding the personal involvement of these defendants, stating "Davis fails to plead any facts describing any personally culpable conduct on the part of either Sheriff Slaughter or Captain Darby. The Amended Complaint does not

4

> allege any fact which indicates any prior occurrences of improper housing placements that resulted in a constitutional violation or that Sheriff Slaughter or Captain Darby were aware of, or had knowledge of any prior occurrences. There is no allegation of a pattern of similar constitutional violations, nor can one be inferred from the Amended Complaint. Davis fails to provide more that conclusory allegations and generalities and therefore stops short of the line between possibility and plausibility as required by *Twombly* and *Iqbal*.

(Doc. 80 at 6 – 7.)

Defendants are correct that supervisory officials can only be held liable under § 1983 if they themselves personally violated a constitutional right, not merely because they supervise others who did. *Iqbal,* 556 U.S. at 683. A supervisor may be liable

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

*Starr v. Baca*, 652 F.3d 1202, (9th Cir. 2011). The question, then, is whether Davis has sufficiently alleged facts to show personal involvement of these defendants.

Before addressing Davis's response, it is worth looking at the facts alleged on this claim in Davis's original Complaint, which is more detailed than his Amended Complaint. In both the original and amended complaints, Davis repeatedly alleges, as part of his failure to protect claim, that jail staff did not respond when he pushed the emergency button to call for assistance. (Docs. 2 at 5 and 77 at 5.) Thus, Davis's failure to protect claim is not directed solely at these

5

supervisory defendants, but also at "staff" who were present when the assault occurred and failed to respond. (In the first Complaint they are named; in the second, they are referred to as "staff.")

Davis's original complaint also alleged that he was placed in a unit where "Captain Darby, Reeves, and Slaughter house violent sex offenders," after he had shown on intake that he was vulnerable to sexual assault. (Doc. 2 at 4.) Davis could not call for assistance from his tablet, because "Reeves and Slaughter failed to put the PREA phone number in the inmate handbook." (Doc. 2 at 5.) Thus, Davis has alleged personal involvement of these defendants, and the personal involvement of other defendants who were named in his first complaint, but not specifically named or detailed in his amended complaint.

The reason for that, possibly, is concerning. Davis's original complaint included, as defendants who are not named in his amended complaint, Officers Knox and Frasier, Lieutenant Grubb, and Reeves. (Doc. 2 at 4 - 6.) Officers Knox and Frasier are particularly identified as involved in placing Davis in a vulnerable position and failing to respond to his calls for help. Yet, surprisingly, they are not named as defendants in Davis's Amended Complaint. Davis's response to Defendants' motion suggests why.

> Before we get to my response, I want the court to know that before I amended my complaint, I had proven that these defendants were indeed responsible for my rape at CCDC and we were supposed to have pre-trial arranged for January of 2025 but I agreed with the

6

> defendant's [sic] legal team that it was indeed not a lower officer's fault for my rape but rather that it was a higher up supervisor's fault which makes it indeed the fault of Sheriff Slaughter, Undersheriff Van Dyken, Captain Darby, and Lieutenant Grubb.... I took the liberty to sue only the supervisor's [sic] of CCDC per the verbal request of Jennifer Morgan, the opposition's counsel.

(Doc. 82 at 2 – 3.)

At this juncture, Davis's claim for failure to protect will not be dismissed. He has alleged personal involvement of the supervisory defendants, to the extent they failed to train or enforce policies that would segregate a vulnerable inmate from a violent one, and they failed to ensure that staff would timely respond in the case of a rape. Davis may need to amend his complaint again to align the proper defendants with the alleged actions, but the allegations of his first complaint stated a claim for failure to protect, and then he appears to have amended it to remove the most likely defendants at the direction of Defendants' counsel. Construing the claim in favor of Davis, and in light of Rule 8's requirement for notice pleading, the claim will not be dismissed.

    2.    Claim Two: PREA Violations

Defendants assert that the Prison Rape Elimination Act does not provide a mechanism for Davis to sue. (Doc. 80 at 7.) Davis does not respond on legal grounds, but instead provides various suggestions for how things in the jail need to change, and thus, that the claim should not be dismissed. (Doc. 82 at 5.)

Defendants are correct that the Prison Rape Elimination Act does not include a private right of action; thus, Davis fails to state a claim on his Count 2. Congress enacted PREA to address the problem of rape in prison by (1) creating a commission to study the issue and recommend national standards to prevent, detect, and respond to prison rape; (2) applying national standards to state and federal agencies and departments that maintain prisons or detention facilities; and (3) conditioning eligibility for federal grant money on compliance with these standards. 42 U.S.C. §§ 15602, 15605. PREA did not create a private right of action for its enforcement. *See* 42 U.S.C. § 15607(e) (directing the Attorney General to enforce compliance with the PREA); *see also Sandoval,* 532 U.S. at 286 (explaining that absent Congressional intent "to create not just a private right but also a private remedy ... no private right of action exists."). Defendants may have violated their own policies developed pursuant to PREA, but Davis does not have an individual right to sue under PREA. This claim will be dismissed.

3. Claim Three: Montana's Duty of Care

Defendants assert that Defendants Slaughter and Darby are immune on Davis's state law claims against them under Montana statutory law, as their actions occurred within the course and scope of their employment. (Doc. 80 at 9.) The proper defendant on these claims would be Cascade County itself, whether they are construed as individual or official capacity claims. (Doc. 80 at 11.)

In response, Davis refers only to Montana state cases in which defendants have been found to violate a duty of care. (Doc. 82 at 6.) Davis does not address the Montana law issue of employee liability raised by Defendants.

Mont. Code Ann. § 2-9-305(5) "provides immunity from suit to individually [] named defendants for actions performed within the course and scope of the official's employment." *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 60, 358 Mont. 193, 244 P.3d 321. This protection applies "if the governmental entity acknowledges or is bound by a judicial determination that the conduct" underlying the claim "arises out of the course and scope of the employee's employment, unless" an exception under Mont. Code Ann. § 2-9-305(6) applies. *Id.* Thus, in order for this state law claim to be dismissed as to these individual defendants, either Butte-Silver Bow County must acknowledge its obligation, or this Court must make a judicial determination that the behavior arose in the scope of Defendants' employment. Though the statute requires an employee defendant to "give written notice to the employee's supervisor requesting that a defense to the action be provided by the governmental entity employer," Mont. Code Ann. 2-9-305(3), and the County is clearly aware of this litigation, there is no evidence in the record that the County has acknowledged its obligation. Thus, Defendants rely on the fact that Davis has also sued these defendants in their official capacity to propose they are, ipso facto, within the course and scope of their employment. That

9

is, by asserting official capacity claims against the defendants, Davis is, himself, alleging that their actions were within the course and scope of their employment.

As a practical matter, dismissal of these state law claims does not dismiss the defendants from this suit. Thus, though the state law claims must be dismissed as to the individual defendants, as barred by Mont. Code Ann. § 2-9-305, Davis must simply add the County to the caption, and we are back where we started. Ordinarily, these county defendants would have provided notice to the County, who would have already stepped in. At this point, this motion appears to be a bit of gamesmanship. Further, the Court is without anything more than Davis's allegations regarding the conduct of these defendants. A judicial determination that they were within the scope of their employment, or that their conduct constituted oppression, fraud, malice, or a criminal offence, as exceptions detailed in Mont. Code Ann. § 2-9-305(6), is premature. Thus, the state law claims will be dismissed without prejudice.

4.   Claim Four: Overcrowding

Davis's claim for overcrowding states that he was required to sleep on the floor of a two-man cell while a federal detainee at Cascade County, in violation of his Eighth Amendment rights. Defendants posit that, on the facts alleged, Davis has not stated a claim for a constitutional violation related to overcrowding. (Doc. 80 at 11 – 12.)

In response, Davis asserts various arguments related to his retaliation claim, and reiterating that placement with a specific person violated his rights. He contests Defendants' argument that an overcrowding claim requires more established injuries by citing *Redman v. Cnty. of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (*abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).) In *Redman*, a jury question remained as to whether overcrowding, which prevented the isolation of a known sex offender, resulted in the plaintiff's injuries. Davis alleges a connection between the overcrowding and the violence against him.

Allegations of prison overcrowding alone are insufficient to state an Eighth Amendment claim. *See Balla v. Idaho St. Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989); *see also Rhodes v. Chapman*, 452 U.S. 337, 348–39 (1981) (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of the Eighth Amendment). "An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused increased violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation." *Montecastro v. Newsom*, 2020 WL 5017282, at *4 (E.D. Cal. Aug. 25, 2020) (citing *Balla*, 869 F.2d at 471, and *Hoptowit v. Ray*, 682 F.2d 1237, 1248–29 (9th Cir. 1982)).

Davis has not yet alleged sufficient facts to prevail on his claim of overcrowding, but he has plausibly alleged that, absent overcrowding, the perpetrator may have been celled elsewhere. It is plausible that overcrowding cause the plaintiff to be placed with his assailant. Without further facts, the claim will not be dismissed.

5. Claim Seven: Denial of Medical/Mental Healthcare.

Defendants assert that Davis alleges no facts to show a violation of any right regarding medical or mental healthcare, other than a claim arising from PREA, which, as explained above, does not create any substantive rights that Davis can assert in court. Thus, the claim must be dismissed. (Doc. 80 at 13.)

Davis's complaint alleges that he received no therapy regarding his rape from August 10, 2023, to February 2024. (Doc. 77 at 6 and 11.) He alleges that he started care but it was cut off in retaliation for filing this lawsuit. (Doc. 77 at 11.) If proven, providing no mental health care or stopping mental health care as retaliation could establish a claim for a violation of Davis's Eighth Amendment rights, as evincing deliberate indifference to a serious medical need. This claim is not subject to dismissal at this point.

### III. MOTION TO APPOINT COUNSEL

Davis has renewed his motion for the appointment of counsel. (Doc. 78.) The members of the District of Montana's pro bono panel have been informed of his claim. At this point, counsel will not be directed to represent Davis.

IV. **SERVICE**

Davis's amended complaint names a defendant, Jacki Miller, who was not named in his original complaint, and thus, has not been served. Defendants' brief asserts that Miller is an employee of Turn Key Health Clinics, LLC, and denies knowledge of whether she has been served. By separate order, a request for waiver of service of complaint will be mailed to Miller at the address provided by Davis.

Accordingly, it is HEREBY ORDERED:

1. Defendants' motion to dismiss is GRANTED, in part, and DENIED, in part. Davis's PREA claim, Count 4, is DISMISSED, with prejudice. Davis's state law claims are DISMISSED, without prejudice.

2. At all times, Davis must update the Court and opposing counsel of any change of address. Failure to do so may result in dismissal.

DATED this 18th day of February, 2025.

Donald W. Molloy, District Judge
United States District Court